```
                UNITED STATES DISTRICT COURT
                    DISTRICT OF VERMONT

FAB-TECH, INC.,                    :
        Plaintiff                  :
                                   :
     v.                            :   CIVIL NO. 1:04CV275
                                   :
E.I. DU PONT DE NEMOURS            :
AND COMPANY,                       :
        Defendant                  :
_____    :
```

                    RULING ON PRETRIAL MOTIONS
                 (Papers 92, 95, 98, 99, 100, 112)

Background

   The parties are presently scheduled to draw their jury on January 4, 2007 and proceed to trial commencing January 25, 2007. See Trial Calendar (Paper 113).  Pending before the Court are a variety of pretrial motions directed either to the evidence to be presented at trial or the merits of plaintiff's claims.

   Solely for the purpose of deciding the pending pretrial motions, the Court sets forth the following:

   In two supply contracts, one dated May 19, 1999 (hereinafter the "1999 agreement"), the other dated June 20, 2000 (hereinafter the "2000 agreement"), DuPont granted Fab-Tech an exclusive right to purchase certain corrosion-resistant fluoropolymer coating products for use in fabricating stainless steel fume exhaust duct systems.  See, e.g., Complaint (Paper 3) at para. 1.  At its heart, this is a contract action wherein Fab-Tech alleges DuPont breached certain provisions contained in their 1999 and 2000

1

agreements, including a promise to not sell or market its coating products to Fab-Tech's competitors.  See Complaint at 7 et seq. In addition, Fab-Tech alleges DuPont's breaches were tortious in nature and constitute a violation of the covenant of good faith and fair dealing implied in every contract.  See Complaint at 12-13.

Plaintiff's Motion for Reclassification of Documents (Paper 92)

During discovery, the parties entered into a Stipulated Protective Order which provides for two levels of confidential documents: "CONFIDENTIAL" and "CONFIDENTIAL ATTORNEYS' AND EXPERTS' EYES ONLY" (hereinafter "Highly Confidential").  See Stipulated Protective Order (appended as exhibit to Paper 92). The plaintiff, without success, has asked the defendant to voluntarily agree to reclassify certain Highly Confidential documents as Confidential, so that it can review them with its client in preparation for trial.

In light of the fact that the parties have neither adequately described these documents, nor have they supplied them for this Court's in camera review, the Motion is DENIED.  The parties are hereby ORDERED to consult immediately in good faith and in an attempt to reach an agreement as to the classification status of the documents at issue.  See Local Rule 26.1(d)(1).

## Plaintiff's Motion in Limine (Paper 95)

In this motion, Fab-Tech requests the Court exclude "certain" testimony which DuPont might offer at trial through one or more corporate representatives "regarding communications between DuPont and Fab-Tech at a November 2, 2000 meeting between" the two litigants.  The asserted ground for this request is "[t]he witness that DuPont offered as its 30(b)(6) witness had little recollection of the communications at the November Meeting."  See Paper 95-1 at 1.

In relevant part, Fed. R. Civ. P. 30(b)(6) provides:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested.  In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . .  The persons so designated shall testify as to matters known or reasonably available to the organization. . . .

Fab-Tech's Second Amended Notice of Deposition of DuPont (appended to Paper 104 as an exhibit) lists in "Schedule A" 29 matters on which DuPont was to produce a knowledgeable deponent. None of the identified topics in Schedule A specifically refer to a "November 2, 2000 meeting."

DuPont designated Richard Albert as its deponent pursuant to Rule 30(b)(6).  His deposition took place on May 17, 2006.  See May 17, 2006 Transcript of Albert Deposition (appended as exhibit

3

to Paper 104).  That transcript indicates Mr. Albert answered some, but not all, of Fab-Tech's questions relating to November 2, 2000.  See, e.g., Albert Tr. at 138, lines 15-18 ("I recall that at the time we left the meeting the intention was that we would hold off on any sales, and I think that's probably using Fab-Tech's words, that we would not sell to Woojin.").

Months later, on August 14, 2006, plaintiff's attorney emailed the defendant's attorney, indicating he considered the November 2, 2000 meeting "extremely significant" and that Mr. Albert, DuPont's designated witness, was not present at the meeting.  Plaintiff's attorney asked: "Does DuPont wish to designate another witness with respect to such matters?"  See Paper 95-3.  It does not appear, however, that the plaintiff noticed another Rule 30(b)(6) deposition specifying DuPont designate a witness knowledgeable about the November 2 meeting.

To comply with Rule 30(b)(6), DuPont was required to produce someone familiar with the subject matter set forth in Fab-Tech's notice.  See, e.g., Reilly v. NatWest Mkts. Group Inc., 181 F.3d 253, 268 (2d Cir. 1999).  "Once the plaintiff notices the deposition and describes the subject matter to be inquired upon with reasonable particularity, the defendant must designate one or more persons to testify."  Belmont Holdings Corp. v. Unicare Life & Health Ins. Co., 2000 WL 1920039, *2 (E.D. Pa. 2000).

"When a designee is unable to adequately respond to certain relevant areas of inquiry, the designating party has a duty to substitute an appropriate deponent." Id.  However, "a witness's failure to testify fully on all the topics set forth in a Rule 30(b)(6) notice is not tantamount to a complete failure to appear justifying sanctions," id. at *3, particularly where, as here, the plaintiff presented an extensive list of topics and made little formal attempt to follow up with another deposition notice more clearly specifying the topic which it now seeks to exclude from trial.  See Dwelly v. Yamaha Motor Corp., 214 F.R.D. 537, 539-40 (D. Minn. 2003) (Rule 30(b)(6) imposes "reciprocal obligations" where "the requesting party must reasonably particularize the subjects about which it wants to inquire").

Furthermore, at this late date, the discovery period has ended, and the plaintiff's objection to defendant's compliance with Rule 30(b)(6) is untimely.  Plaintiff's Motion in Limine is DENIED.

Defendant's Motion to Exclude Parol Evidence (Paper 99)

In this case, Fab-Tech alleges, inter alia, that DuPont breached certain exclusivity and marketing support provisions in the 1999 agreement and the 2000 agreement.  See Paper 3 (both agreements are appended as Complaint exhibits).  The exclusivity provision common to both agreements provides:

> Dupont will not knowingly sell to companies other than Fab-Tech and its affiliates fluoropolymer coating products assigned product code numbers 532-6005 and 532-6012.  However, DuPont will not prevent other companies from buying its fluoropolymer coatings under product codes different from those assigned to products sold to Fab-Tech.

The marketing support provision common to both agreements provides:

> DuPont will not actively market fluoropolymer coating products other than those assigned product codes 532-6005 and 532-6012 for use on corrosive fume exhaust ducts in any region of the world, excluding Japan and continental Europe ("continental Europe" is defined to include the United Kingdom).

DuPont asks the Court to prohibit the introduction at trial of any parol evidence to interpret what it argues are the "unambiguous terms" of these two provisions.  See Paper 99 at 1.  In response, Fab-Tech maintains the introduction of certain extrinsic evidence, including the parties' course of dealing and relevant trade usage, is required so the trier of fact can fully understand these provisions.  According to Fab-Tech, the product codes constitute shorthand which "referred not merely to product codes but to the jointly developed technology represented by the product codes."  See Paper 109 at 3-4.

On their face, both the 1999 and 2000 agreements support Fab-Tech's contention.  Both agreements begin with the following recitation:

6

> In consideration of our joint efforts over the past six
> (6) years to develop the market for stainless steel
> corrosive fume exhaust duct systems coated with Teflon
> brand ETFE fluoropolymer resin, DuPont Teflon Finishes
> and Fab-Tech, Inc. commit to the following supply
> arrangement . . . .

Accordingly, the 1999 and 2000 agreements indicate the parties' dealings are based upon and to be understood as part of a larger "joint effort."

Under Vermont law, whether a contractual term is ambiguous is an issue of law for the Court.  See Isbrantdtsen v. North Branch Corp., 150 Vt. 575, 577 (1988).  "A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation."  Id.

When inquiring into the existence of ambiguity, a court may consider the circumstances surrounding the making of the agreement.  Id. at 579.  "Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations appear reasonable."  Id.

Here, the exclusivity and marketing support provisions suggest slightly different interpretations, depending on whether they are read in isolation, as urged by DuPont, or in light of the agreements' introductory paragraph, as urged by Fab-Tech.  DuPont suggests these provisions merely refer to items with certain product code numbers; however, consideration of the introductory paragraph relied upon by Fab-Tech reasonably

7

suggests these codes refer to product developed as part of a broader agreement or understanding between the parties. See John A. Russell Corp. v. Bohlig, 170 Vt. 12, 17 (1999) ("To determine the meaning of a specific provision of a contract, we consider the whole instrument and construe it in harmony if possible."); but see Vogel v. W.A. Sandri, Inc., 898 F. Supp. 254, 257 (D. Vt. 1995) (the court found no ambiguity where agreement only indicated a requirements contract); Judge Dev. Corp. v. Bank of New York, 814 F. Supp. 384, 389 (D. Vt. 1993) (parol evidence inadmissible where it contradicts plain contractual meaning).

Defendant's Motion to Exclude Parol Evidence is DENIED.

<u>Defendant's Motion For Judgment as to Count I (Paper 112)</u>

Pursuant to Fed. R. Civ. P. 12(c), Dupont has moved for judgment on the pleadings as to Count I. The standard employed under Rule 12(c) is similar to the one used for evaluating a Rule 12(b)(6) motion. DuPont may be granted judgment on the pleadings if it has demonstrated no material issue of fact exists, and it therefore is entitled to judgment as a matter of law. See Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (1990).

In Count I, Fab-Tech alleges DuPont breached the 1999 agreement. The 1999 agreement, entered into on May 20, 1999, was to continue through December 31, 2001. However, the parties' 2000 agreement, entered into on or about June 19, 2000, provides: "This Agreement, immediately upon its execution, shall supersede

the 1999 Agreement in its entirety." DuPont argues this undisputed fact renders plaintiff's claim in Count I untimely.

DuPont's argument is based on the applicability of 9A V.S.A. § 2-725(1). That provision states, in relevant part, that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Here, the 1999 agreement was superseded on June 19, 2000, and Fab-Tech did not file its Complaint until August 9, 2004; therefore, according to Dupont, Count I is barred by 9A V.S.A. § 2-725(1).

It is true, as DuPont notes, that this Court has found that agreements where one party agrees to supply a product are covered by Vermont's Uniform Commercial Code. See Vogel, 898 F. Supp. at 254. The problem with DuPont's argument in this case is that it ignores the fact that the 1999 agreement is also alleged to be an agreement to jointly develop a product and provide "marketing support" for the resulting goods. See Joint Trial Memorandum (Paper 94) at III-Stipulations, para. 9 ("Working together, Fab-Tech and DuPont developed an exhaust system . . . ").

"Complications arise when the transaction involves both goods and services. The courts have held the application of the UCC in these instances turns on the 'essence' of the agreement." TK Power, Inc. v. Textron, Inc., 433 F. Supp. 2d 1058, 1061 (N.D. Cal. 2006).

In this case, therefore, the Court must discern the predominant character of the parties' agreement; that is "whether the thrust is the rendition of service with goods incidentally involved or whether the transaction is a sale of goods with labor incidentally involved."  Id.  Viewed as a whole, it is reasonable to conclude the agreement between DuPont and Fab-Tech is less a "goods contract" and more a "services contract," thereby rendering the UCC statute of limitations inapplicable.

As noted supra, both the 1999 agreement and the 2000 agreement were made "[i]n consideration of [their] joint efforts over the past six (6) years to develop the market for stainless steel corrosive fume exhaust duct systems . . . ."  In conjunction with that agreement DuPont also committed to provide marketing support to Fab-Tech.  In context, DuPont's agreement to exclusively provide certain coating materials was designed to aid Fab-Tech in developing unique markets for a product resulting from their joint efforts.  DuPont's role as supplier of fluoropolymer coatings, while undoubtedly important, does not overshadow the contracts' more essential character as agreements by which the parties seek to jointly develop new markets for a new or improved product.  See 1999 and 2000 agreements at 3 (appended as exhibits to Paper 3) ("In the event that DuPont and Fab-Tech choose to work together to develop new markets, new products or new applications for existing products, Fab-Tech or

10

any of its affiliates working in the new areas, shall purchase 100% of their fluoropolymer requirements from DuPont for such new products, markets or applications.").

In some circumstances, a court may apply a blend of UCC and non-UCC law to different portions of the contract.  See TK Powers, 433 F. Supp. 2d at 1063.  To determine whether such bifurcated treatment is appropriate, courts consider: (1) whether the "goods" and "non-goods" aspects of the transaction are clearly distinct and easily separable; (2) whether the alleged non-performance of the contract pertains solely to the "non-goods" aspect of the transaction; and (3) whether it makes sense to apply a particular UCC provision to the "non-goods" aspect of the transaction at issue.  See id. at 1064; accord Korangy v. Mobil Oil Corp., 84 F. Supp. 2d 660, 667 (D. Md. 2000) ("when a contract involves a mixture of goods and non-goods, Maryland looks to the 'predominant purpose' of the contract to determine whether the UCC applies"); Fitzgerald v. Congleton, 155 Vt. 283, 288 (1990) (to determine applicable statute of limitations, Vermont courts look to the "nature of the harm done").

Based upon these considerations, the Court finds the standard six-year statute of limitations applicable to civil actions should apply, thereby rendering plaintiff's Count I timely.  See 12 V.S.A. §511.  In this case, the parties' sales and services agreements are intertwined.  The non-performance

relates primarily to DuPont's alleged "duty . . . to not actively market fluoropolymer coating products other than those assigned Du Pont product codes 532-6005 and 532-6012 for use on corrosive fume exhaust ducts . . ." and "to not actively promote other brands of corrosive fume exhaust duct in any region of the world, excluding Japan, continental Europe and the United Kingdom." Complaint at paras. 37, 38.  Finally, it seems inappropriate to apply the UCC statute of limitations to render untimely a complaint based on DuPont's "marketing" conduct.

DuPont has not established its entitlement to judgment as a matter of law.  Defendant's Motion for Judgment on the Pleadings as to Count I is DENIED.

### Defendant's Motion to Exclude Evidence (Paper 98)

"DuPont moves in limine to exclude all evidence of conduct and events occurring outside the applicable limitations period defined by Vermont statutes, as follows: 1) for plaintiff's breach of contract claims: 9A V.S.A. § 2-725; 2) for plaintiff's tortious breach of contract claims: 12 V.S.A. § 512; and 3) for plaintiff's breach of covenant of good faith and fair dealing claims: 12 V.S.A. § 512." Paper 98 at 1.

Fab-Tech has voluntarily dismissed its claims for tortious breach of contract contained in Count III of its complaint.  See Fab-Tech's Response (Paper 107) at 1, n.1.  Accordingly, DuPont's motion as it relates to Count III is DENIED as moot.

Regarding the remainder of DuPont's argument, the Court has explained, <u>supra</u>, that the agreements at issue, viewed in their totality, are better characterized as subject to the six-year statute of limitations set forth in 12 V.S.A § 511.  In addition, the basis of Fab-Tech's good faith and fair dealing claims is contractual and not covered by § 512.  <u>See</u>, <u>e.g.</u>, <u>Bull v. Pinkham Eng'g Assocs., Inc.</u>, 170 Vt. 450, 455 (2000) ("where there is no claim of damage to personal property, we have held that § 511 applies to actions seeking damages for economic loss"); <u>Investment Props., Inc. v. Lyttle</u>, 169 Vt. 487, 491-93 (1999) (with the exception of those enumerated in § 512, "most other civil actions" are subject to a six-year limitations period).

The Court rejects DuPont's argument that any section other than 12 V.S.A. § 511 supplies the applicable limitations period. The remainder of Defendant's Motion to Exclude Evidence is DENIED.

<u>Defendant's Motion to Exclude Damages Evidence (Paper 100)</u>

DuPont has moved to preclude Fab-Tech from introducing at trial any evidence of "special, indirect or consequential" damages.  In part, Paragraph 2 of the "Standard Conditions of Sale," incorporated in both the 1999 agreement and the 2000 agreement states:

13

> No claim of any kind, whether as to products delivered
> or for nondelivery of products, and whether or not
> based on negligence, shall be greater in amount than
> the purchase price of the products in respect of which
> damages are claimed; and failure to give notice of
> claim within ninety (90) days from date of delivery or
> the date fixed for delivery (in the case of
> nondelivery), shall constitute a waiver by Buyer of all
> claims in respect of such products.  No charge or
> expense incident to any claims will be allowed unless
> approved by an authorized representative of
> Seller. . . .  The remedy hereby provided shall be the
> exclusive and sole remedy of Buyer.  In no event shall
> either party be liable for special, indirect or
> consequential damages, whether or not caused by or
> resulting from the negligence of such party.

According to the parties' agreement, therefore, Fab-Tech is limited as to the damages it can claim as a result of DuPont's breach of contract, as it relates to the sale to Fab-Tech of fluoropolymer product identified in the 1999 agreement and the 2000 agreement.  See generally 9A V.S.A. § 2-719.  At the time of trial, the Court will consider the parties' request to so instruct the jury on that damages issue.

As discussed supra, however, such permissible limitation of damages arising from the sale of goods is not dispositive of the remainder of Fab-Tech's claims, which arise, inter alia, from DuPont's alleged bad faith breach of contract to provide development and marketing services.  See 9A V.S.A. § 2-102 ("Unless the context otherwise requires, this article applies [only] to transactions in goods . . . .") and 9A V.S.A. § 2-105(1) ("'Goods' means all things (including specially manufactured goods) which are movable at the time of

14

identification to the contract for sale other than money in which the price is to be paid . . .")."). Accordingly, Defendant's Motion in Limine to Exclude All Evidence of Special, Indirect or Consequential Damages is DENIED.

Dated at Brattleboro, Vermont, this 13th day of December, 2006.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge